# 26-_____

# United States Court of Appeals

*for the*

# Second Circuit

IN RE KARTOON STUDIOS, INC.

PETITION FOR A WRIT OF MANDAMUS TO THE UNITED STATES
DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK
IN CASE NO. 1:22-CV-00249-AS
(HONORABLE ARUN SUBRAMANIAN)

## EMERGENCY PETITION FOR A WRIT OF MANDAMUS

AARON T. MORRIS
ANDREW W. ROBERTSON
MORRIS KANDINOV LLP
305 Broadway, 7th Floor
New York, New York 10007
(212) 431-7473

*Counsel for Petitioner
  Kartoon Studios, Inc.*

COUNSEL PRESS
A Proceed Service
The Appellate Experts®
(800) 4-APPEAL • (515587)

## CORPORATE DISCLOSURE STATEMENT
## (FEDERAL RULE OF APPELLATE PROCEDURE 26.1)

## <u>Kartoon Studios Inc.</u>

Petitioner Kartoon Studios Inc. (f/k/a Genius Brands International Inc.) is a publicly held corporation that has no parent corporation. No public company beneficially owns greater than 10% of Kartoon Studios Inc.'s outstanding common stock.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...............................................................................iv

STATEMENT OF JURISDICTION .....................................................................1

STATEMENT OF RELIEF SOUGHT ..................................................................1

STATEMENT OF THE ISSUES ..........................................................................1

STATEMENT OF THE FACTS ............................................................................2

     A.    Plaintiff Augenbaum Files Section 16(b) Claims On Behalf Of The Company.........................................................................2

     B.    The Company's Reevaluation Of The Claims And Negotiation Of A Settlement .................................................................4

     C.    The District Court Denies The Company's Motion For Judgment Pursuant To The Settlement ................................................10

     D.    Further Negotiations Do Not Result In A Global Resolution And The Matter Is Proceeding To Trial ..........................11

ARGUMENT .......................................................................................................11

I.    THE COMPANY HAS A CLEAR AND INDISPUTABLE RIGHT TO RELIEF FROM THE DISTRICT COURT'S ORDER BLOCKING ITS SETTLEMENT...................................................12

II.    THE COMPANY HAS NO ADEQUATE REMEDIES OR ALTERNATIVES TO A WRIT ...................................................................21

III.    ISSUANCE OF THE WRIT IS APPROPRIATE........................................22

CONCLUSION ...................................................................................................24

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*AEC One Stop Grp., Inc. v. Bain Cap. Fund IV L.P.*,
   9 F. App'x 53 (2d Cir. 2001) ................................................................................... 17

*AEC One Stop Grp., Inc. v. Bain Cap. Fund IV L.P.*,
   2000 WL 1279807 (S.D.N.Y. Sept. 11, 2000) ........................................................ 17

*Am. Express Warehousing, Ltd. v. Transamerica Ins. Co.*,
   380 F.2d 277 (2d Cir. 1967) ................................................................................... 22

*Chechele v. Elsztain*,
   2012 WL 12358221 (S.D.N.Y. Aug. 1, 2012) ........................................................ 18

*Cheney v. U.S. Dist. Court*,
   542 U.S. 367 (2004) ........................................................................................... 11, 21

*In re City of New York*,
   607 F.3d 923 (2d Cir. 2010) ........................................................................ 11, 12, 22

*Donoghue v. Bulldog Invs. Gen. P'ship*,
   696 F.3d 170 (2d Cir. 2012) ............................................................................ *passim*

*FTC v. Dean Foods Co.*,
   384 U.S. 597 (1966) ................................................................................................. 1

*Gibbons v. Morgan*,
   2017 WL 3917041 (S.D.N.Y. Sept. 6, 2017) ..................................... 14, 16, 18, 19

*Gollust v. Mendell*,
   501 U.S. 115 (1991) ................................................................................................ 13

*Kahn v. Kaskel*,
   367 F. Supp. 784 (S.D.N.Y. 1973) ......................................................................... 15

*Klein on behalf of Qlik Techs., Inc. v. Qlik Techs., Inc.*,
   906 F.3d 215 (2d Cir. 2018) ............................................................... 12-13, 14

iv

*Linde v. Arab Bank, PLC*,
  706 F.3d 92 (2d Cir. 2013)......................................................................22

*Magida v. Cont'l Can Co.*,
  231 F.2d 843 (2d Cir. 1956)...............................................................13, 18

*Padovani v. Bruchhausen*,
  293 F.2d 546 (2d Cir. 1961).....................................................................22

*In re Roman Catholic Diocese of Albany*,
  745 F.3d 30 (2d Cir. 2014)......................................................................23

*SEC v. Rajaratnam*,
  622 F.3d 159 (2d Cir. 2010).....................................................................12

*Salovaara v. Jackson Nat'l Life Ins. Co.*,
  246 F.3d 289 (3d Cir. 2001).....................................................................16

*Schaffer ex rel. Lasersight, Inc. v. CC Invs., LDC*,
  286 F. Supp. 2d 279 (S.D.N.Y. 2003).................................................18, 19

*Star v. TI Oldfield Dev., LLC*,
  962 F.3d 117 (4th Cir. 2020)....................................................................16

*Steel Partners II, L.P. v. Bell Indus., Inc.*,
  315 F.3d 120 (2d Cir. 2002).....................................................................13

*Smolowe v. Delendo Corp.*,
  136 F.2d 231 (2d Cir. 1943).....................................................................14

*United States v. Prevezon Holdings Ltd.*,
  839 F.3d 227 (2d Cir. 2016).....................................................................12

*Wolf v. Barkes*,
  348 F.2d 994 (2d Cir. 1965)..........................................................14,19, 20

v

| **Statutes & Other Authorities** | **Page(s)** |
|---|---|

15 U.S.C. § 78p ...................................................................................... 13

28 U.S.C. § 1651 ................................................................................ 1, 11

Arnold S. Jacobs, *An Analysis of Section 16 of the Securities Exchange Act*
  32 N.Y.L. Sch. L. Rev. 209 (1987) ............................................... 17-18

## STATEMENT OF JURISDICTION

This Court has authority to issue a writ of mandamus pursuant to the All Writs Act, 28 U.S.C. § 1651(a), because the underlying action is "within its appellate jurisdiction although no appeal has been perfected." *FTC v. Dean Foods Co.*, 384 U.S. 597, 603-04 (1966).

## STATEMENT OF RELIEF SOUGHT

Petitioner Kartoon Studios, Inc. ("Kartoon" or the "Company")—the Nominal Defendant and owner of the claims asserted derivatively in the underlying action from which this appeal is taken—seeks a writ of mandamus directing the U.S. District Court for the Southern District of New York to enter judgments against the Settling Defendants (defined below) pursuant to a pre-trial settlement negotiated and approved by the Company's Board of Directors (the "Board"), which would have resulted in the payment of at least $39 million to the Company and the release of substantial potential liability.

## STATEMENT OF THE ISSUES

Whether the District Court erred in holding, contrary to the body of case law issued by this Court, that a claim under Section 16(b) of the Securities Exchange Act of 1934 does not belong to the Company and cannot be settled by the Company over the objection of the Plaintiff, who owns less than one share of stock and asserts the claim derivatively in this action. The District Court abused its discretion, and ignored this Court's guidance, in refusing to enforce the Company's settlement of the Section

16(b) claims, which has unjustly deprived the Company of critically needed capital and exposed the Company—unwillingly—to the risks of trial and potential post-trial claims for indemnity by Defendants. A writ should be issued.

## STATEMENT OF THE FACTS

### A. Plaintiff Augenbaum Files Section 16(b) Claims On Behalf Of The Company

Kartoon Studios Inc. is a Nevada incorporated, publicly traded entertainment company specializing in the development and distribution of children's television programming. The Company has nearly 300 employees and trades on the NYSE American exchange under the symbol "TOON."

On October 28, 2020, Todd Augenbaum ("Augenbaum" or "Plaintiff"), who currently owns a fraction of one share of Kartoon stock, made a demand on the Company to pursue claims under Section 16(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78p(b), against investors who had participated in a March 2020 financing transaction with the Company and follow-on registered direct offerings. Augenbaum alleged the investors formed an undisclosed group under Section 13(d) of the Exchange Act, subjecting the investors to restrictions of Section 16(b), even though no individual investor owned more than 10% of the Company's stock. In light of concerns over the viability of Plaintiff's legal theory, the Company elected not to pursue the Section 16(b) claims itself at the time.

2

In January 2022, Augenbaum filed this action (the "Action") against Defendants Anson Investments Master Fund LP ("Anson"); Brio Capital Master Fund Ltd. and Brio Select Opportunities Fund, LP ("Brio"); CVI Investments, Inc. ("CVI"); Empery Asset Master, Ltd., Empery Debt Opportunity Fund, LP, Empery Tax Efficient, LP, and Empery Asset Management, LP ("Empery"); Iroquois Master Fund Ltd. and Iroquois Capital Investment Group, LLC ("Iroquois"); L1 Capital Global Opportunities Master Fund ("L1"); M3A LP ("M3A"); and Richard Molinsky ("Molinsky"). ECF No. 1.

In January 2024, the District Court denied Defendants' motion to dismiss. ECF 142. The case proceeded through extensive fact and expert discovery and both Defendants and Plaintiff moved for summary judgment. ECF Nos. 224, 231. On September 30, 2025, the District Court denied all motions for summary judgment, finding triable questions of fact as to whether the Defendants agreed to act as a group. ECF 287. Trial is set to begin on June 8, 2026.

Following the filing of this action, certain Defendants made demands on the Company for indemnity and advancement of costs pursuant to the Securities Purchase Agreement ("SPA") at issue in this case.[1] ECF No. 360-1 ¶ 15. The

---

[1] Defendants claim that § 9(k) of the SPA requires the Company to advance defense costs incurred in this Action and ultimately indemnify Defendants for any liability, which the Company has repeatedly rejected. The Company reserves all rights and waives none.

3

Company rejected the demands on the grounds that indemnification of Section 16(b) liability is impermissible as a matter of public policy and the language of the SPA does not extend to Section 16(b) claims. Nevertheless, following the District Court's ruling on summary judgment, certain Defendants began to renew their claims for indemnity and advancement, and two Defendants filed actions in New York seeking advancement and indemnity.[2] *Id.* ¶ 16. The Company believes the current amount of outstanding indemnity and advancement demands is in excess of $13 million.

### B. The Company's Reevaluation Of The Claims And Negotiation Of A Settlement

On January 30, 2026, in light of the District Court's ruling denying summary judgment, the Company's current financial condition, the potential value of the claims to the Company, and the indemnification and advancement demands made by certain of the Defendants, the Board convened a special meeting. ECF No. 395-1 ¶ 2. Following extensive discussion, the Board determined unanimously to form a Litigation Committee (the "Committee") to further analyze the Company's litigation positions, explore potential settlement structures that could be value maximizing for the Company, test the potential to reach a resolution in the near term, and advise the Board with respect to the foregoing and recommended next steps. *Id.* The Board

---

[2] *See Iroquois Master Fund Ltd., et al. v. Kartoon Studios, Inc.*, No. 650077/2026 (N.Y. Supr. Ct.); *Empery Asset Master, Ltd., et al. v. Kartoon Studios, Inc.*, No. 650906/2026 (N.Y. Supr. Ct.).

authorized and empowered the Committee to, among other things, evaluate the merits and potential value of the Section 16(b) claims in the Action; evaluate the Defendants' indemnification and advancement claims; engage directly with the parties to the Action, including the mediator, David Murphy of Phillips ADR, to discuss a potential resolution of the claims; make recommendations to the Board as may be, in the Committee's view, in the best interests of the Company and its stockholders; and submit for the Board's consideration any specific proposals for the potential settlement or prosecution of the Section 16(b) claims. *Id.* The Committee was empowered to retain advisors deemed necessary to fulfill its mandate and was given full access to the Company's officers and employees. *Id.*

On February 2, 2026, the Committee retained counsel at Morris Kandinov LLP, which provided the Committee an overview of the history and procedural status of the Action, including the claims asserted therein, and the history and status of the Defendants' indemnification and advancement claims. *Id.* ¶ 4. The Committee thereafter authorized counsel to make an initial outreach to the other parties and the mediator in the Action, Mr. Murphy. *Id.* On February 13, 2026, at the Committee's request, the Committee received a memorandum from counsel regarding the history and background of the Action. *Id.* ¶ 5.

On March 9, 2026, the Committee met to discuss further developments relating to the Action following initial discussions with counsel for the Plaintiff,

Abraham Fruchter & Twersky, LLP ("AFT"); the mediator, Mr. Murphy; and counsel for Defendants. *Id.* ¶ 6. Following that discussion, the Committee determined to retain additional counsel at Kirkland & Ellis ("K&E") to represent the Committee in connection with all settlement negotiations between the parties. *Id.*

On March 27, 2026, the Committee received a detailed memorandum from counsel regarding the nature, status, and history of Defendants' claims for indemnification and advancement under the SPA. *Id.* ¶ 7. Also on March 27, 2026, the Committee met to receive an update as to discussions between K&E and the other parties to the Action. *Id.* ¶ 8. Based on these discussions, K&E informed the Committee that it believed that a resolution of the Section 16(b) claims appeared to be possible with certain of the Defendants in the range of $35 million to $50 million. *Id.* The Committee authorized K&E to continue its discussions. *Id.*

On April 6, 2026, the Committee received a memorandum from counsel regarding the legal principles, evidentiary record, and central disputes in the Action, including an overview of the law under Sections 16(b) and 13(d) of the Exchange Act, Plaintiff's anticipated evidence and testimony at trial, and Defendants' anticipated evidence and testimony at trial. *Id.* ¶ 9. The memorandum included, as exhibits, relevant deposition testimony of the parties and was transmitted with electronic access to the full case file and deposition transcripts. *Id.*

On April 16, 2026, the Committee met to discuss ongoing settlement communications with the parties and potential next steps. *Id.* ¶ 10. K&E advised the Committee that, after significant back and forth, Defendants had agreed to a global resolution at $50 million with six (and ultimately seven) of the eight defendants (the "Settling Defendants") participating *pro rata*, reflecting a gross cash settlement payment of $36.5 million.[3] *Id.* Following substantial discussion by the Committee regarding, among other things, the merits of the potential settlement, the Company's current financial condition and cash position, the potential of the settlement to provide a cash infusion that could avoid or mitigate the need for near-term financing, the pending indemnity and advancement claims, the likelihood of a recovery at trial, and the potential delay in receiving an award at trial caused by an appeal, the Committee concluded that it was satisfied with settlement negotiated by K&E and that the risks to the Company of the claims proceeding to trial were high in light of the probability of success and the Company's need for capital. *Id.*

On April 20, 2026, the Committee participated in a call with counsel for Plaintiff, Abraham, Fruchter & Twersky, regarding the Action, the potential settlement, and Plaintiff's view as to settlement. *Id.* ¶ 11.

---

[3] The Settling Defendants initially included Anson, CVI, Iroquois, L1, M3A, and Molinsky. A seventh Defendant, Brio, later agreed to participate pro rata in the Settlement, bringing the gross payment to $39 million.

7

Later in the day on April 20, 2026, the full Board met to receive an update and recommendation from the Committee. *Id.* ¶ 12. The Board received an update as to, among other things, the procedural history of the Action and the Section 16(b) claims asserted, the Committee's evaluation process and recent discussion with counsel for Plaintiff, the pending claims for indemnity and advancement made by the Defendants, the negotiation with the parties and the potential gross and net value of the potential settlement with the Settling Defendants, the Company's financial position and current cash and financing requirements, and the likelihood of success at trial and the timing of payment of any verdict in favor of the Company. *Id.* The members of the Committee addressed the Board directly as to their observations and findings throughout the process and the numerous business factors relevant to the Company's decision as to whether to settle the Section 16(b) claims or prosecute them at trial. *Id.* After an extensive discussion among all directors present at the meeting, the Board resolved to approve the settlement with the Settling Defendants, but to delay acceptance to allow counsel for Plaintiff additional time to participate directly in the negotiations (to the extent he was willing to do so). *Id.*

On or about May 1, 2026, K&E informed the Company that Plaintiff had not substantively engaged in subsequent settlement discussions and was unlikely to

8

participate in further settlement negotiations.[4] *Id.* ¶ 13. Therefore, pursuant to the authority provided by the Board at its April 20, 2026 meeting, the Company executed the Definitive Settlement Agreement with the Settling Defendants (the "Settlement"). *See* ECF 360-1 ¶ 12.

Following the Board's approval, Defendant Brio agreed to join the Settlement for an additional amount of $2.5 million. Thus, under the terms of the original Settlement, the Company would have received $39 million in gross proceeds with an advance of $5 million within five days of the District Court's entry of a stay of proceedings as to the Settling Parties. ECF No. 360-1, Ex. 1 at § 2.3(a)-(b). In addition, the Settling Defendants would have provided releases of all claims that were or could have been asserted relating to the Action, expressly including any claims for indemnity or advancement of defense costs against the Company. *Id.* § 4.1. The settlement amount was anticipated to provide all foreseeable capital requirements of the Company. ECF No. 360-2 ¶ 3.

---

[4] During the April 20, 2026 call between Mr. Schlesinger and counsel for Plaintiff, Mr. Schlesinger acknowledged and expressed appreciation for counsel's work on behalf of the Company thus far in the litigation. Ultimately, however, counsel did not put forward a settlement demand or otherwise attempt to meaningfully participate in settlement discussions with Defendants. *See* ECF No. 360-1 ¶ 13.

9

**C.** **The District Court Denies The Company's Motion For Judgment Pursuant To The Settlement**

On May 6, 2026, the Company filed, pursuant to the Settlement against the Settling Defendants, a Motion for Entry of Judgment (the "Judgment Motion") (ECF No. 358) against the Settling Defendants.

On May 27, 2026, the District Court issued an order denying the Motion for Entry of Judgment (the "Order") purportedly because "Section 16(b) of the Securities Exchange Act of 1934 does not authorize a security issuer to release a security holder's claims under these factual circumstances." Order at 1. Citing largely treatises and a small number of non-binding and inapplicable decisions, the District Court held that Section 16(b) "gives a security owner a primary—not derivative—right to pursue claims if a company fails to act on a demand within sixty days." *Id.* In so holding, the District Court ignored this Court's precedent that a Section 16(b) claim always belongs to the issuer and confused the Plaintiff's procedural right to bring the Company's claim derivatively with a "primary right" that does not exist under the statute. *Id.* at 5. The decision erroneously deprived the Company of the benefits of the Settlement both with respect to the monetary payment as well as the elimination of the risks at trial and the potential associated indemnity and advancement claims. Trial is proceeding imminently against certain of the Settling Defendants.

### D. Further Negotiations Do Not Result In A Global Resolution And The Matter Is Proceeding To Trial

At the hearing on the Judgment Motion, the Court instructed Plaintiff and the Settling Defendants to continue mediating. Following continued negotiations, Plaintiff reached a settlement with Defendants Iroquois, CVI, M3A and Molinsky, in addition to a prior agreement with L1 reached during the pendency of the Motion for Entry of Judgment, resulting in gross proceeds of $28,475,000, but Plaintiff has not agreed to settle with Defendants Empery, Anson and Brio, despite that the latter two Defendants previously agreed to settle with the Company for $21,204,034 and $2,500,000, respectively. Thus, as of today, the Company faces a shortfall of approximately $10.5 million relative to the Settlement it had previously negotiated. The Company has been deprived of that larger amount and now faces the additional risks of proceeding to trial and obtaining nothing and facing indemnity and advancement claims post-trial.

## ARGUMENT

The All Writs Act, 28 U.S.C. § 1651(a), empowers this Court to issue a writ of mandamus directing a district court to correct an erroneous order. A writ should be issued where the petitioner shows (1) a "clear and indisputable" right to relief, (2) no other adequate means to obtain it, and (3) that issuance is appropriate under the circumstances. *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380-81 (2004); *In re City of New York*, 607 F.3d 923, 932-33 (2d Cir. 2010). Each condition is satisfied here.

11

## I.     THE COMPANY HAS A CLEAR AND INDISPUTABLE RIGHT TO RELIEF FROM THE DISTRICT COURT'S ORDER BLOCKING ITS SETTLEMENT

A petitioner has a "clear and indisputable" right to relief where the district court has committed a "judicial usurpation of power or a clear abuse of discretion." *In re City of N.Y.*, 607 F.3d 923, 943 (2d Cir. 2010). A court abuses its discretion when its ruling is based "on an erroneous view of the law" or "on a clearly erroneous assessment of the evidence," or "cannot be located within the range of permissible decisions." *SEC v. Rajaratnam*, 622 F.3d 159, 171 (2d Cir. 2010); *see also United States v. Prevezon Holdings Ltd.*, 839 F.3d 227, 236 (2d Cir. 2016) (mandamus is appropriate where "a party will be irreparably damaged if forced to wait until final resolution of the underlying litigation before securing review of an order denying its motion").

Here, the District Court abused its discretion by rejecting long-established precedent in this Circuit to deprive the Company of its right to settle its own claims. Section 16(b) created a statutory claim *for issuers* to reclaim short-swing trading profits from "insiders," including those who own more than 10% of the company's stock. *Donoghue v. Bulldog Invs. Gen. P'ship*, 696 F.3d 170, 175 (2d Cir. 2012) ("Section 16(b) confers on issuers a legal right to the short–swing profits of insiders."). Black letter case law in this Circuit holds that a Section 16(b) claim belongs solely and exclusively to the Company. *See, e.g., Klein*, 906 F.3d at 226

12

("[T]he issuer of the securities at issue, is the real party in interest in this [Section 16(b)] derivative litigation"); *Donoghue*, 696 F.3d at 175 ("Where, as here, a shareholder plaintiff pursues a § 16(b) claim on behalf of an issuer, the claim 'is derivative in the sense that the corporation is the instrument.'"); *Steel Partners II, L.P. v. Bell Indus., Inc.*, 315 F.3d 120, 123 (2d Cir. 2002) ("The issuing corporation or, derivatively, a shareholder is entitled to maintain an action seeking to have the profit disgorged to the corporation."); *Magida v. Cont'l Can Co.*, 231 F.2d 843, 846 (2d Cir. 1956) ("The action under § 16(b) is derivative.").[5]

Section 16(b) also provides stockholders with a *procedural* right to pursue a claim derivatively on the issuer's behalf if the issuer declines to pursue the claim itself, but stockholders have "no direct financial interest in the outcome of the litigation" and all claims must be brought "solely on the corporation's behalf" and "only to the issuer's benefit." *See Gollust v. Mendell*, 501 U.S. 115, 125 n.7, 127 (1991); *see also* 15 U.S.C. § 78p(b); *Smolowe v. Delendo Corp.*, 136 F.2d 231, 241

---

[5] Numerous additional cases hold the same: *Abrams v. Occidental Petroleum Corp.*, 47 F.R.D. 301, 308 (S.D.N.Y. 1969) ("Of course, every Section 16(b) claim belongs to the corporation and, when asserted by a stockholder, is a secondary or derivative action."); *In re Myovant Scis. Ltd. Section 16(b) Litig.*, 513 F. Supp. 3d 365, 371 (S.D.N.Y. 2021) (the issuer is "the ultimate plaintiff in interest on whose behalf shareholders can bring a derivative suit under Section 16(b)"); *Nosirrah Mgmt., LLC v. EVmo, Inc.*, 2023 WL 35028, at *3 (S.D.N.Y. Jan. 4, 2023) (the "real party in interest" in Section 16(b) litigation is "the issuer of the securities"); *Roth v. Scopia Cap. Mgmt. LP*, 2017 WL 3242326, at *4 (S.D.N.Y. July 28, 2017) ("Section 16(b) litigation is derivative in nature" and the "substantive right" is the issuer's).

13

(2d Cir. 1943) ("Ordinarily the corporate issuer must bring the action; and only upon its refusal or delay to do so, as here, may a security holder act for it in its name and on its behalf."); *Donoghue v. Bulldog Invs. Gen. P'ship*, 696 F.3d 170, 175 (2d Cir. 2012) (Where a "shareholder plaintiff pursues a § 16(b) claim on behalf of an issuer, the claim is derivative in the sense that the corporation is the instrument"). The "express purpose" of the statute is to "prevent misuse of the corporation's information, not any individual stockholder's." *See Gibbons v. Morgan*, No. 14-CV-9061 (KBF), 2017 WL 3917041, at *5 (S.D.N.Y. Sept. 6, 2017).

Because a Section 16(b) claim *always* belongs to the issuer, an issuer's refusal to initially pursue the claim (as occurred here) does not waive or divest any rights the Company has to the claim. *See Klein*, 906 F.3d at 227-28 (holding that a "company that rejects a [Section 16(b)] demand to sue does so with the knowledge that a shareholder can sue on its behalf" and thus does not waive its right to intervene in the matter). Rather, the Company retains the right to manage the claim, including to settle it as determined by the Company's managers.

For example, in *Wolf v. Barkes*, this Court upheld an issuer's settlement of claims under Section 14(a) of the Exchange Act despite plaintiff's objection. 348 F.2d 994, 996-97 (2d Cir. 1965). The Court noted that "[n]o one would contend that a corporation could not negotiate a release of corporate claims, even against insiders, before a derivative suit was started," and the "corporation's interest in achieving a

14

favorable settlement does not cease because derivative litigation has begun." *Id.*

While the "commencement of a derivative suit provides a handle for judicial supervision not present when the corporation negotiates at an earlier stage," the court ruled that "the corporation's power to make its own out-of-court settlements, subject to normal shareholder redress, is not abolished by a procedural rule [Rule 23] that does not embrace these either in its language or in its primary rationale."[6] *Id. See*

---

[6] Indeed, the Court made clear that Rule 23 is intended to address the potential risks associated with a stockholder settling a corporation's claim, not the corporation's settlement of its own claim:

> While a board of directors dominated by the defendants with whom settlements are made would find it hard to provide a release that would survive charges of self-dealing, dismissal or compromise by an independent stockholder, with the corporation simply standing idle, would not be subject to such easy attack. A new derivative suit against management for fraud or waste in releasing corporate claims for inadequate payment can redress improper settlements even without setting them aside; finding a management target when the derivative shareholder has terminated the corporate claim may be a harder assignment. When the acquiescence of a derivative plaintiff to a dismissal or a consent judgment has in effect been purchased by the defendants, the supposed vigorous champion of the shareholders at large has been retired; far from policing the disposition of the corporate claim, he may well assist in seeing that the news does not leak out to stir other shareholders to inquiry. No such silencing of the derivative plaintiff occurs when the corporation settles out of court with some of the defendants. Indeed, he is the very person most likely to challenge the settlement, either by pursuing the original action and attempting to overthrow the settlement or by bringing a new action against the directors in which the settlement itself is the gravamen of the complaint.

348 F.2d 994 at 996-97.

15

*also Kahn v. Kaskel*, 367 F. Supp. 784, 789 (S.D.N.Y. 1973) ("There is nothing in Rule 23.1 which in any way prohibits a corporation from making an out-of-court settlement and giving a general release merely because a derivative action, brought on its behalf, is pending in a federal court."); *Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 296 (3d Cir. 2001) ("A corporation may enter into a settlement despite the existence of a derivative action when doing so is in the corporation's best interests."); *Star v. TI Oldfield Dev., LLC*, 962 F.3d 117, 133 (4th Cir. 2020) ("[S]ettlements that are in the best interests of the company, entered by a disinterested board, [will] moot a related derivative suit asserting identical or similar claims arising out of the same underlying facts.").

In *Gibbons v. Morgan*, the district court enforced a prior state-court settlement, and dismissed a pending Section 16(b) claim, where the company's prior settlement had released "any claims that could be asserted derivatively on behalf of [the Company]." 2017 WL 3917041, at *2 (S.D.N.Y. Sept. 6, 2017). The court found the settlement preclusive even though the prior litigation did not assert a Section 16(b) claim (indeed, the state court would have lacked jurisdiction). *Id.* The Section 16(b) plaintiff argued that the state-court settlement could not release her claims because they were "direct rather than derivative," which the court rejected and held that "although an individual stockholder is statutorily empowered to bring suit in

16

certain limited circumstances, that suit is nonetheless brought "in the name and in behalf of the issuer." *Id.* at \*5.

Similarly, in *AEC One Stop Grp., Inc. v. Bain Cap. Fund IV L.P.*, the company filed a chapter 11 petition automatically staying a pending Section 16(b) litigation brought by a stockholder-plaintiff. 2000 WL 1279807, at \*1 (S.D.N.Y. Sept. 11, 2000), *aff'd* 9 F. App'x 53 (2d Cir. 2001). After restructuring, the Section 16(b) claim was assigned to the reorganized company, which then "substitute[d] itself for [plaintiff] in this action and [counsel]." *Id.* Thereafter, the company settled the claims "without participation by [stockholder-plaintiff's] counsel." *AEC One Stop Grp., Inc. v. Bain Cap. Fund IV L.P.*, 9 F. App'x 53, 54 (2d Cir. 2001). In that case, this Court not only did not question the settlement but declined to grant fees to the plaintiff's counsel because they were "extinguished" in restructuring.

In this case, the District Court simply ignored the precedent above to hold that Section 16(b) endows stockholders with "a primary—not derivative—right to pursue claims" under the statute, which apparently may be exercised, in the District Court's view, to usurp any corporate decision regarding how to settle such claims. Order at 1. In support of this erroneous theory, the Court cited snippets from two treatises, one of which was authored in 1987 before virtually all of the rulings cited above and, in any event, clarifies elsewhere that "the section 16(b) cause of action belongs to the issuer" and "does not belong to the issuer's stockholders." *See Arnold S. Jacobs,*

17

*An Analysis of Section 16 of the Securities Exchange Act of 1934*, 32 N.Y.L. Sch. L. Rev. 209, 572 (1987).

The District Court's case citations likewise do not support its ruling. In *Magida*, this Court considered an affirmative defense to a Section 16(b) claim that an issuer and "its stockholders were estopped from claiming any profits realized by it on the purchase and sale [at issue]" because of the issuer's role in encouraging the transactions, which were "made at the specific instance and request of [the company]." 231 F.2d at 846. This Court held that the issuer's prior actions did not "negate the statutory liability" or otherwise preclude the plaintiff from exercising its *procedural* right to bring the Section 16(b) claim. *Id.* The only relevance *Magida* has to this case, if any, is that the Court held that a "§ 16(b) [claim] is derivative." *Id.*

The Court also cited the trial court ruling in *Schaffer ex rel. Lasersight, Inc. v. CC Invs., LDC*, 286 F. Supp. 2d 279, 282 (S.D.N.Y. 2003), and *Chechele v. Elsztain*, 2012 WL 12358221, at *2 (S.D.N.Y. Aug. 1, 2012), which relies primarily on *Schaffer*, to hold that Section 16(b) provides a "primary right" to Plaintiff. Order at 3. But those cases are simply wrong. For example, the District Court in *Gibbons* directly addressed and rejected the line of cases citing *Schaffer*, holding that "although an individual stockholder is statutorily empowered to bring suit in certain limited circumstances, that suit is nonetheless brought 'in the name and in behalf of

18

the issuer.'" 2017 WL 3917041, at *2. In that case, the plaintiff relied on a "series of inapposite bankruptcy cases suggesting that Section 16(b) claims are direct rather than derivative," including *Schaffer*. The court held that it is "clear that plaintiffs' Section 16(b) claim is derivative" and that the inapposite holdings in *Schaffer* and others "used the terms 'direct' and 'derivative' in a completely different sense." *Id.* at *5-6.

The District Court also erred by focusing on the source of the claim rather than whether it belongs to the Company or stockholders. For example, the District Court stated that this Court's holding in *Wolf* does not apply because it involved "a more traditional derivative action under Section 14(a), which lacks an express right of action for shareholders." Order at 3. But a claim either belongs to the Company— and thus may be asserted derivatively by stockholders—or not. It is irrelevant whether the source of the claim is express or implied by statute or arises under common law. *See, e.g., Gibbons*, 2017 WL 3917041 at *4 (holding that "a derivative action is one that is brought by a corporate stockholder on behalf of the corporation" and the "analysis must be based solely on the following questions: [1] Who suffered the alleged harm—the corporation or the suing stockholder individually—and [2] who would receive the benefit of the recovery or other remedy?'"); *Donoghue*, 696 F.3d at 175 (noting that "a derivative action generally is 'a mere procedural device

19

to enforce' substantive rights belonging to the issuer" and holding that a Section 16(b) action is "derivative").

Lastly, while the District Court suggested that allowing the Company to settle its own Section 16(b) claims would raise "dicey legal questions" regarding the nature and extent, if any, of the Court's role in approving the settlement (*see* Order at 5), those questions already have been addressed by this Court:

| District Court's "Questions" | This Court's Answers From *Wolf* |
|---|---|
| Does the Court have authority to approve or disapprove the company's settlement with the Settling Defendants? If so, what is the legal authority for that and what standards apply? | No, but the settlement may be reviewable in equity "where the beneficiaries of the alleged improper dealing still dominated the board of directors and plaintiffs were able to make some proof that wrongdoing was afoot." 348 F.2d at 998 (2d Cir. 1965). Plaintiff made no such allegations here and the District Court had no basis to reject the Settlement. |
| While the parties have suggestions, drawing from standards applicable to class actions and the like, they haven't pointed to any statute or rule of procedure that would clearly apply under the circumstances. | Rule 23 does not apply. A "corporation's power to make its own out-of-court settlements, subject to normal shareholder redress, is not abolished by a procedural rule that does not embrace these either in its language or in its primary rationale." 348 F.2d at 997. |

20

| District Court's "Questions" | This Court's Answers From *Wolf* |
|---|---|
| Would notice to shareholders be warranted? | No, for the reasons above. Rule 23 requires notice when a stockholder seeks to settle a corporation's claim to provide judicial and corporate oversight, but when the corporation itself settles the claim, "there can be little doubt that if we look only at the letter of the rule, it does not apply." 348 F.2d at 996. |
| And what about the arguments made by Augenbaum? | The plaintiff may file "a new action against the directors in which the settlement itself is the gravamen of the complaint," or it may raise any wrongdoing with the court presiding over the derivative action, as discussed above, which Plaintiff has not done here. 348 F.2d at 997. |

The District Court's ruling should be reversed because it is contrary to black letter law in this Circuit and is clearly erroneous.

## II.  THE COMPANY HAS NO ADEQUATE REMEDIES OR ALTERNATIVES TO A WRIT

The Company has "no other adequate means" to obtain the relief it seeks. *Cheney*, 542 U.S. at 380. The circumstances here weigh heavily in favor of issuance. Trial begins June 8, 2026, and no other procedural alternative can deliver relief before then. The trial threatens to result in the forfeiture of roughly $23.7 million in settlement dollars the Company obtained from Defendants Anson and Brio that was thwarted by the District Court. This potential recovery is of critical importance to

the Company and constitutes a substantial property right expropriated by the District Court in favor of the Plaintiff. Moreover, in the event Defendants prevail at trial, the Company stands to face millions of dollars in indemnification claims that will threaten its solvency—risks that Plaintiff, who has less than $1 in financial interest in the outcome of this litigation, has not acknowledged and has not taken into account in blocking the Settlement.

## III. ISSUANCE OF THE WRIT IS APPROPRIATE

In determining whether the writ is appropriate, this Court considers several factors, including whether the petition presents "a novel and significant question of law" or a "legal issue whose resolution will aid in the administration of justice." *City of N.Y.*, 607 F.3d at 939 (internal quotation marks omitted). The Court has also considered whether "there is extreme need for reversal of the district court's mandate before the case goes to judgment," *Am. Express Warehousing, Ltd. v. Transamerica Ins. Co.*, 380 F.2d 277, 282 (2d Cir. 1967), and whether the writ is necessary "to see that justice is done between litigants before the court." *Padovani v. Bruchhausen*, 293 F.2d 546, 548 (2d Cir. 1961).

Mandamus is appropriate when the district court's ruling is "patently erroneous." *Linde v. Arab Bank, PLC*, 706 F.3d 92, 108 (2d Cir. 2013); *see also In re City of New York*, 607 F.3d 923, 939 (2d Cir. 2010) ("The Supreme Court has also recognized . . . the ability of mandamus to 'serve as [a] useful safety valve[] for

22

promptly correcting serious errors.'" (quotation omitted; alterations in original)); *In re Roman Catholic Diocese of Albany*, 745 F.3d 30, 37 (2d Cir. 2014) (granting mandamus where the harms could be prevented only through issuance of the writ and the district court's order was clearly erroneous).

Here, while the Company's motion presents an arguably novel issue in the context Section 16(b), the District Court patently ignored the law in this Circuit as to the nature of a Section 16(b) claim and the entitlement of a corporation generally to settle its own claims. The harm to the Company is imminent and unrecoverable from Defendants if trial is permitted to proceed and Defendants prevail, and while the Company may pursue a claim against Plaintiff for his breach of fiduciary duty in connection with blocking the settlement, it is unclear whether Plaintiff has assets satisfy to such claims. The Company is entitled to immediate appellate review to remediate its right to the settlement amounts barred by the District Court's erroneous ruling.

23

## CONCLUSION

Petitioner respectfully requests that this Court issue a writ of mandamus (i) vacating the District Court's May 27, 2026 Order denying the Motion for Entry of Judgment (ECF No. 405); (ii) directing the District Court to enter the proposed judgments (ECF No. 358) in favor of the Company against Defendants Anson and Brio; and (iii) directing the District Court to stay all proceedings as to Defendants Anson and Brio pending entry of judgment.

Respectfully submitted,

By: /s/ Aaron T. Morris

**MORRIS KANDINOV LLP**
Aaron T. Morris (#5675178)
Andrew W. Robertson (#4288882)
305 Broadway, 7th Floor
New York, NY 10007
(212) 431-7473
aaron@moka.law
andrew@moka.law

Counsel for Kartoon Studios, Inc.

24

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 21(d) because it contains 5767 words, excluding the parts exempted by Rule 32(f).

This petition complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it has been prepared in proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font for body text and footnotes.

Dated: June 5, 2026

/s/ *Aaron T. Morris*
Aaron T. Morris

25

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2026, I caused a copy of the foregoing to be served on the following via e-mail:

Jeffrey S. Abraham
Michael J. Klein
Abraham, Fruchter & Twersky, LLP
450 Seventh Avenue
38th Floor
New York, NY 10123
(212) 279-5050
jabraham@aftlaw.com

Evan Mandel
Robert Glunt
Mandel Bhandari LLP
80 Pine Street
33rd Floor
New York, NY 10005
(212) 269-5600
(646) 964-6667 (fax)
glunt@mandelbhandari.com
*Attorneys for Todd Augenbaum*

Andrew D. Gladstein
Shannon Sciaretta
Freshfields US LLP
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY 10007
(212) 277-4000
andrew.gladstein@freshfields.com
*Attorneys for Empery Asset
Management, LP*

Susan L. Saltzstein
Jeffrey S. Geier
Kurt W. Hemr
Skadden, Arps, Slate, Meagher &
Flom LLP
One Manhattan West
New York, NY 10001-8602
(212) 735-3000
susan.saltzstein@skadden.com
*Attorney for CVI Investments, Inc.*

William O. Reckler
Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020
212-906-1200
212-751-4864 (fax)
william.reckler@lw.com

Christopher J. Clark
Clark Smith Villazor LLP
666 Third Avenue, 21st Floor
New York, NY 10017
(212) 377-0850
clark@csvllp.com
*Attorneys for Iroquois Master Fund
Ltd.*

26

John B. Horgan
Joanna R. Cohen
Aldonsa V. Janjigian
Ellenoff Grossman & Schole LLP
1345 Avenue of the Americas,
11th Floor
New York, NY 10105
(212) 370-1300
jhorgan@egsllp.com
*Attorneys for Brio Capital Master Fund Ltd.*

Richard M. Asche
Litman Asche & Gioiella LLP
350 Central Park West
Suite 10F
New York, NY 10025
(917) 414-6951
richardasche@lagnyc.com
*Attorney for M3A LP*

Hon. Arun Subramanian
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Kieran M. Corcoran
Nicole Khalouian
Stinson LLP
1325 Avenue of the Americas,
27th Floor
New York, NY 10019
(212) 763-8491
kieran.corcoran@stinson.com
*Attorneys for Richard Molinsky*

Evan W. Bolla
Yonaton Aronoff
Harris St. Laurent LLP
New York
40 Wall St
53rd Floor
New York, NY 10005
(917) 512-9472
ewbolla@hs-law.com
*Attorneys for L1 Capital*

Dennis H. Tracey
Catherine Bratic
Hogan Lovells US LLP
100 International Drive, Suite 2000
Baltimore, MD 21202
(410) 659-2700
peter.martinez@hoganlovells.com
*Attorneys for Anson Investments Master Fund LP*

27